NWOKORO & SCOLA, ESQUIRES
44 Wall Street, Suite 1218
New York, NY 10005
Tel.: (212) 785-1060
Attorneys for plaintiff


```
--------------------------------X---------------------------
S.N. by his mother and natural   :UNITED STATES DISTRICT COURT
guardian, PATRICE NELSON,        :SOUTHERN DISTRICT OF NEW YORK
                                 :
             Plaintiff,          : CASE No.:_____
                                 :
     against                     : CIVIL ACTION
                                 :
THE CITY OF NEW YORK, DETECTIVE  : COMPLAINT
DAVID TERRELL, and JANE DOE,     :
                                 : PLAINTIFF DEMANDS
                                 : TRIAL BY JURY
                                 :
                                 :
             Defendant(s).       :
--------------------------------X---------------------------
```

TAKE NOTICE, the Plaintiff, S.N. by his mother and natural guardian, PATRICE NELSON, hereby appears in this action by his attorneys, Nwokoro & Scola, Esquires, and demands that all papers be served upon them, at the address below, in this matter.

Plaintiff, S.N., by his attorneys, Nwokoro & Scola, Esquires, complaining of the defendants, The City of New York, Detective David Terrell, and Jane Doe, collectively referred to as the Defendants, upon information and belief, alleges as follows:

## NATURE OF THE ACTION

1. This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute,

ordinance, regulation, custom, and or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983.

## JURISDICTION

2. The jurisdiction of this Court is invoked under 28 U.S.C. §1343(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States. Jurisdiction of this court exists pursuant to 42 USC §1983 and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3. As the deprivation of rights complained of herein occurred within the Southern District of New York, venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c).

## PARTIES

4. Plaintiff, S.N., is currently 16 years of age, and resides in the Bronx, within the City and State of New York.

5. Patrice Nelson is the mother and natural guardian of the infant plaintiff, S.N. and is also a resident of the Bronx, within the City and State of New York.

6. The actions which form the underlying basis for this case all took place in the County of Bronx, within the jurisdiction of the Southern District of New York.

7. Defendants Detective David Terrell and Jane Doe, are police

officers for the City of New York acting under color of state law. At all material times, the defendant Police Officers were employed at the 42nd precint of the New York City Police Department, which covers the area known as the Morrisanna Section of the Boro of the Bronx. They are being sued in both their individual and official capacities.

8. The Defendant, City of New York is a municipality in the State of New York and employs the Defendant Police Officers.


## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9. On or about September 1, 2015, plaintiff S.N. was the victim of a shooting by an unknown perpetrator. He was shot in the leg and wounded but not mortally. He was taken to the hospital where he received treatment. While at the hospital, he was interviewed by Police Officer Jane Doe, described as a white female with glasses. Plaintiff gave a statement to Officer Jane Doe regarding the shooting and stated that he did not see the shooter and could not identify the person who shot him.

10. Plaintiff was in hospital for 3 days and then was discharged on or about September 4, 2015. On or about September 4, 2015, while plaintiff, now on crutches as a result of the shooting, was sitting on a bench in front of his residential apartment building located at 1077 Boston Road, Bronx, New York, plaintiff S.N. was approached by several police officers including Jane Doe, who grabbed the plaintiff S.N. and began to search him.

11. After going through plaintiff's pockets without finding anything, officer Jane Doe made plaintiff hop over to a patrol vehicle and physically placed him in the rear of the

vehicle and took him to the 42nd Precinct. At no time during this arrest was plaintiff told why he was being arrested or what he was being accused of.

12.   Police officer Jane Doe took plaintiff S.N. to the 42nd Precinct, and placed him in a cell and left him there for hours without telling him why he had been arrested and what he was charged with, although he inquired.

13.   Defendant Terrell then came and took the plaintiff S.N. out of the cell and took him to a room in the rear of the precinct and further interviewed him. Defendant boasted to the plaintiff about how he had caught many criminals. Then he told the plaintiff, "I know who shot you, but do you know who shot you? The street talks. You must know?" Plaintiff S.N. explained repeatedly to defendant Terrell that he did not see the shooter and could not identify the shooter.

14.   Despite plaintiff S.N. explaining over and over to detective Terrell, that he did not know who shot him, Detective Terrell kept him in the back room for about three hours, badgering him about the identity of the shooter and insinuating that plaintiff must know the identity of the shooter because "the street talks".

15.   During this period, Detective Terrell showed the plaintiff a photograph of a hispanic teenager with hair whom the plaintiff did not recognize. Defendant Terrell tried to get the plaintiff to identify the Hispanic teenager in the photograph as the shooter, but plaintiff had never seen that person before and said so. Plaintiff also re-iterated to the defendant that he could not identify the shooter because he, plaintiff, never saw the shooter as he, plaintiff, ran away as soon as he heard shots and only later realized that he had been shot in the leg.

16. When plaintiff failed to identify the Hispanic teenager in the photograph as the person who shot him, for the umpteenth time, Detective Terrell became irate, and threatened to kick plaintiff's head through the wall and punch him in the face if he stated once again that he did not recognize the person in the photograph. Defendant Terrell, kept saying "Stop playing. I will kick your head through the wall" and "stop playing, I will punch your face".

17. After badgering and threatening the plaintiff for about three to four hours with the same, result, defendant Terrell placed the plaintiff back in his cell.

18. That the plaintiff remained in the custody of the defendant police officers until he was brought before a Judge and charged with disorderly conduct.

19. The arrest of plaintiff on or about September 4, 2015, was without probable cause.

20. That the said arrest was motivated by malice and a desire on the part of Detective David Terrell and Police Officer Jane Doe to improperly coarse the plaintiff into giving false testimony against the Hispanic teenager in the photograph shown to the plaintiff by Detective Terrell.

21. That at no time prior to or during the above events was there probable cause to arrest the plaintiff, nor was it reasonable for the defendants to believe that probable cause existed.

22. That after two months of going to court, the criminal charge against the plaintiff from the arrest of about September 4 or September 5, 2015, described above, was dismissed before trial.

23. That in the course of the aforesaid arrest, plaintiff S.N. was detained, manhandled, restrained and handcuffed by Jane

5

Doe and other police officers and thereafter was transported in a police vehicle to the offices of the 42nd precint of the NYPD, where he was pedigreed, booked and further detained.

24. That while plaintiff was being detained, Detective Terrell and Officer Jane Doe completed arrest paperwork, in which they swore in part, that the plaintiff had committed a crime and or offense.

25. That the factual claims by Detective Terrell and Jane Doe were materially false and the defendants knew it to be materially false at the time they first made it, and every time thereafter, when they repeated it.

26. That Detective Terrell and the John Doe Police Officer defendants forwarded these false allegations to the Bronx County District Attorney (BCDA) in order to justify the arrests and to persuade the BCDA to commence the plaintiff's criminal prosecution.

27. That it was as a direct result of these false allegations by the defendant police officers, that the plaintiff was criminally arraigned and charged.

**AS A FIRST CAUSE OF ACTION FOR THE ARREST AGAINST DETECTIVE DAVID TERRELL AND JANE DOE, FALSE ARREST/IMPRISONMENT: UNLAWFUL SEARCH AND SEIZURE: DEPRIVATION OF RIGHTS IN VIOLATION OF THE 4TH AND 14TH AMENDMENTS, BROUGHT PURSUANT TO 42 U.S.C § 1983**

28. By this reference, plaintiff incorporates each and every preceding allegation and averment of this complaint as though fully set forth herein.

29. In the arrest, detention and imprisonment of plaintiff on or about January 27, 2014, defendants, acting under color of state law, deprived the plaintiff of his right to be free from unreasonable search and seizure and arrest

without probable cause or reasonable suspicion as required by the Fourth and Fourteenth Amendments, therefore defendants are liable for violation of 42 U.S.C. Section 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

30. As a result of aforesaid violation, plaintiff has been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know him, was prevented from attending to his necessary affairs, and has been caused to incur legal expenses, and have been otherwise damaged in his character and reputation.

31. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

32. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

**AS A SECOND CAUSE OF ACTION AGAINST DETECTIVE DAVID TERREL AND JANE DOE: MALICIOUS PROSECUTION: DEPRIVATION OF LIBERTY IN VIOLATION OF THE 4TH AND 14TH AMENDMENTS, BROUGHT UNDER 42 U.S.C§ 1983**

33. By this reference, plaintiffs incorporates each and every preceding allegation and averment of this complaint as though fully set forth herein.

34. That the defendant officers were directly involved in the initiation of criminal proceedings against the plaintiff.

35. That the defendant officers lacked probable cause to initiate criminal proceedings against the plaintiff.

36. That the defendant officers acted with malice in initiating

criminal proceedings against the plaintiff.

37. That the defendant officers were directly involved in the continuation of criminal proceedings against the plaintiff.

38. That the defendant officers lacked probable cause in continuing criminal proceedings against the plaintiff.

39. That the defendant officers acted with malice in continuing criminal proceedings against the plaintiff.

40. That the defendant officers misrepresented and falsified evidence throughout all phases of the criminal proceeding.

41. That the defendant officers misrepresented and falsified evidence to the prosecutors in the Bronx County District Attorney's office.

42. That the defendant officers withheld exculpatory evidence from the prosecutors in the Bronx County District Attorney's office.

43. That the defendant officers did not make a complete statement of facts to the prosecutors in the Bronx County District Attorney's office.

44. The arrest, imprisonment and prosecution of the plaintiff was malicious and unlawful, because plaintiff had committed no crime and there was no probable cause to believe that plaintiff had committed any crimes.

45. The defendant officers actions were intentional, unwarranted and in violation of the law. The defendant officers had full knowledge that the charges made before the Court against the plaintiffs were false and untrue.

46. By their conduct as described above, and acting under color of state law, defendants are liable to plaintiff under 42 U.S.C. § 1983 for the violation of his constitutional right to be free from malicious prosecution under the fourth and fourteenth amendments to the United States Constitution.

47. As a consequence of the malicious prosecution by the

defendant officers, plaintiff suffered a significant loss of liberty, humiliation, mental anguish, depression, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against defendant officers, individually and severally.

48. In addition, the defendant officers conspired among themselves to deprive plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth and Fourteenth Amendments to United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

49. The defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD Officers. Said acts by the Defendants Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive the Plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

50. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs sustained the damages herein before stated.

51. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above

## AS A THIRD CAUSE OF ACTION AGAINST THE DEFENDANT CITY OF NEW YORK: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

52. By this reference, plaintiffs incorporates each and every allegation and averment set forth in all preceding paragraphs of this complaint as though fully set forth herein.

53. The defendant officers arrested and incarcerated the plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize the plaintiff's liberty, well-being, safety and constitutional rights.

54. The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

55. The defendant officers acted under color of law, in their official capacity, and their acts were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department.

56. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practices:

a. Wrongfully arresting individuals on the pretext that they are engaged in illegal or criminal conduct;

b. manufacturing evidence against individuals allegedly involved in illegal or criminal conduct;

c. unlawfully searching detainees and/or their property in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband;

d. arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas); and

e. wrongfully and unreasonably brutalizing innocent members of the public, despite the lack of probable cause to do so.

57. The aforesaid event was not an isolated incident. The City and its police commissioner has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City and its police commissioner have allowed policies and practices that allow the aforementioned to persist.

58. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an

officer.

59.  The NYPD, once receiving a substantiated complaint by the
     CCRB, fails to adequately discipline officers for
     misconduct. The NYPD Department Advocate, which is endowed
     with the responsibility of following up on substantiated
     CCRB charges, is understaffed and under-utilized.
     Furthermore, in the extraordinarily rare event, such as the
     matter at bar, that the CCRB substantiates a complaint and
     the Department Advocate proves the case in an internal
     trial against an officer, the police commissioner still
     maintains the power to reduce the discipline against such
     an officer, which has been done on many occasions.

60.  Further, the City and its police commissioner have no
     procedure to notify individual officers or their
     supervisors of unfavorable judicial review of their
     conduct. Without this notification, improper search and
     seizure practices and incredible testimony go uncorrected.

61.  Additionally, according to a report of the New York City
     Bar Association issued in 2000, the City has isolated their
     law department from the discipline of police officers, so
     that civil suits against police officers for actions taken
     in their capacity as police officers have no impact on the
     officers' careers, regardless of the outcome of the civil
     actions. Alan Hevesi, as New York City Comptroller, in 1999
     reported that there was a "a total disconnect" between the
     settlements of even substantial civil claims and police
     department action against officers.

62.  The existence of the aforesaid unconstitutional customs and
     policies may also be inferred from the admission by Deputy
     Commissioner Paul J. Browne, as reported by the media on
     January 20, 2006, that commanders are permitted to set
     "productivity goals".

63. Furthermore, the existence of the aforesaid unconstitutional customs and policies may also be inferred from the ruling (Docket entry 32) of the Court (Eastern District of New York), in the case(s) of Jose Colon v. City of New York, et al (09-cv-8) and Maximo Colon v. City of New York, et al (09-cv-9), wherein the Court stated, *inter alia*, that "*Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department*", and that "*there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving the illegal conduct of the kind now charged*".

64. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a deliberate indifference to the safety, well-being and constitutional rights of all defendants, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:

(a) The right of the plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

(b) The right of the plaintiff not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to him

by the Fifth and Fourteenth Amendments to the Constitution of the United States.

(c)  The right to be free from unreasonable detention and/or continued detention without probable cause in that the plaintiff was detained.

(d)  The right to be free from the use of excessive force.

65.  As a result of the actions of the defendants, the plaintiff was deprived of his rights, privileges, and immunities secured by the United States Constitution, in particular, the Fourth, Fifth, and Fourteenth Amendments, in contravention of 42 USC §1983 and the laws of New York State, and New York City without just or legal cause when defendant City, by its employees and/or agents unlawfully arrested and imprisoned the plaintiff thereby depriving him of his liberty without due process of law.

66.  The defendant officers were the actual agents of the defendant City of New York and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated the plaintiff's constitutional and civil rights, and the City of New York is therefore responsible for their acts, and liable to the plaintiff for the damages he suffered.

67.  The actual principal/agent relationship between defendant City and the defendant officers was created by the fact they were employees of defendant City, and the City had the right to, and it did indeed regulate and control the activities and conduct of the defendant officers.

68.  The defendant officers actions were vicious, wicked, cold-hearted, intentional, malicious, unwarranted and in violation of the law. The individual defendants had full knowledge that the charges made before the Court against the plaintiff were false and untrue.

**WHEREFORE,** plaintiff respectfully requests judgment against the Defendants as follows:

1. For compensatory damages against all defendants in an amount to be proven at trial;
2. For exemplary and punitive damages against all defendants in an amount to be proven at trial;
3. For costs of suit herein, including plaintiff's reasonable attorney's fees; and;
4. For such other and further relief as the court deems proper.

Dated: April _13__, 2017,
        New York, New York

_____/s/_____
Chukwuemeka Nwokoro, Esq.
Nwokoro & Scola, Esquires
Attorney for Plaintiff
44 Wall Street, Suite 1218
New York, New York 10005
Tel. (212) 785-1060