```
-------------------------------X----------------------------
SHAWN NARDONI,                 :UNITED STATES DISTRICT COURT
                               :SOUTHERN DISTRICT OF NEW YORK
                               :
            Plaintiff,         : CASE No.:17-CV-2695 (GHW)
                               :
     against                   : CIVIL ACTION
                               :
THE CITY OF NEW YORK, DETECTIVE : SECOND AMENDED COMPLAINT
DAVID TERRELL, and DETECTIVE   :
CORINNE MACLENNAN,             : PLAINTIFF DEMANDS
                               : TRIAL BY JURY
                               :
                               :
            Defendant(s).      :
-------------------------------X----------------------------
```

Plaintiff, SHAWN NARDONI, by his attorneys, Nwokoro & Scola, Esquires, complaining of the defendants, The City of New York, Detective David Terrell, and Detective Corinne Maclennan, collectively referred to as the Defendants, upon information and belief, alleges as follows:

## NATURE OF THE ACTION

1.  This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983.

## JURISDICTION

2.  The jurisdiction of this Court is invoked under 28 U.S.C. §1343(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom and usage

1

of a right, privilege and immunity secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States. Jurisdiction of this court exists pursuant to 42 USC §1983 and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3.   As the deprivation of rights complained of herein occurred within the Southern District of New York, venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c).

**PARTIES**

4.   Plaintiff, Shawn Nardoni, is currently 18 years of age, and resides in the Bronx, within the City and State of New York.

5.   The actions which form the underlying basis for this case all took place in the County of Bronx, within the jurisdiction of the Southern District of New York.

6.   Defendants Detectives David Terrell and Corinne Maclennan, are police officers for the City of New York acting under color of state law. At all material times, the defendant Police Officers were employed at the 42nd precinct of the New York City Police Department, which covers the area known as the Morrisanna Section of the Boro of the Bronx. They are being sued in both their individual and official capacities.

7.   The Defendant, City of New York is a municipality in the State of New York and employs the Defendant Police Officers.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

8.   On or about September 1, 2015, plaintiff Shawn Nardoni was the victim of a shooting by an unknown perpetrator. He was

2

shot in the leg and wounded but not mortally. He was taken to the hospital where he received treatment. While at the hospital, he was interviewed by Detective Officer Corinne Maclennan, described as a white female with glasses. Plaintiff gave a statement to Detective Maclennan regarding the shooting and stated that he did not see the shooter and could not identify the person who shot him.

9.  Plaintiff was in hospital for three days and then was discharged on or about September 3, 2015. On or about September 4, 2015, while plaintiff, now on crutches as a result of the shooting, was sitting on a bench in front of his residential apartment building located at 1077 Boston Road, Bronx, New York, plaintiff was approached by several police officers including Detective Maclennan, who grabbed the plaintiff and began to search him.

10. After going through plaintiff's pockets without finding anything, Detective Maclennan made plaintiff hop over to a patrol vehicle and physically placed him in the rear of the vehicle and took him to the 42nd Precinct. At no time during this arrest was plaintiff told why he was being arrested or what he was being accused of.

11. Detective Maclennan took plaintiff to the 42nd Precinct, and placed him in a cell and left him there for hours without telling him why he had been arrested and what he was charged with, although he inquired.

12. Defendant Terrell then came and took the plaintiff out of the cell and took him to a room in the rear of the precinct and further interviewed him. Defendant boasted to the plaintiff about how he had caught many criminals. Then he told the plaintiff, "I know who shot you, but do you know who shot you? The street talks. You must know?" Plaintiff explained repeatedly to defendant Terrell that he did not

see the shooter and could not identify the shooter.

13. Despite plaintiff explaining over and over to detective Terrell, that he did not know who shot him, Detective Terrell kept him in the back room for about three hours, badgering him about the identity of the shooter and insinuating that plaintiff must know the identity of the shooter because "the street talks".

14. During this period, Detective Terrell showed the plaintiff a photograph of a hispanic teenager with big hair whom the plaintiff did not recognize. Defendant Terrell tried to get the plaintiff to identify the Hispanic teenager in the photograph as the shooter, but plaintiff had never seen that person before and said so. Plaintiff also re-iterated to the defendant that he could not identify the shooter because he, plaintiff, never saw the shooter as he, plaintiff, ran away as soon as he heard shots and only later realized that he had been shot in the leg.

15. When plaintiff failed to identify the Hispanic teenager in the photograph as the person who shot him, for the umpteenth time, Detective Terrell became irate, and threatened to kick plaintiff's head through the wall and punch him in the face if he stated once again that he did not recognize the person in the photograph. Defendant Terrell, kept saying "Stop playing. I will kick your head through the wall" and "stop playing, I will punch your face".

16. After badgering and threatening the plaintiff for about three to four hours with the same, result, defendant Terrell placed the plaintiff back in his cell.

17. Plaintiff later on became aware that the name of the Hispanic teenager with big hair whose photograph was shown to the plaintiff by Detective Terrell is Pedro Hernandez.

4

18. Detective David Terrell and Detective Corinne Maclennan were both part of the 42nd Precinct Detective Squad who were charged with investigating the shooting of Shawn Nardoni that occurred on September 1, 2015.

19. Defendants Terrell and Maclennan believed that the person who shot the plaintiff on September 1, 2015, was Pedro Hernandez and both defendants conspired to solve that crime by coercing the plaintiff into falsely identifying Pedro Hernandez as the shooter.

20. Detective Terrell attempted to improperly coerce the plaintiff into falsely identifying Pedro Hernandez as the person who shot the plaintiff on September 1, 2015, by use of physical threats and threat of unfounded criminal prosecution.

21. Detective Terrell acting in concert with Detective Maclennan, initiated, arranged, and or caused the arrest of the plaintiff on false pretenses so that Detective Terrell could coerce him into providing false testimony against Pedro Hernandez by physical threats and the threat of criminal prosecution.

22. Detective Maclennan, acting in concert with Detective Terrell, improperly arrested and detained the plaintiff under false pretenses in order to coerce plaintiff into providing false testimony against Pedro Hernandez by use of physical intimidation and the threat of criminal prosecution.

23. That the plaintiff remained in the custody of the defendant police officers until he was brought before a Judge and charged with disorderly conduct.

24. The arrest of plaintiff on or about September 4, 2015, was without probable cause.

25. That the said arrest was motivated by malice and a desire

on the part of Detective David Terrell and Detective
Corinne Maclennan to improperly coerce the plaintiff into
giving false testimony against Pedro Hernandez.

26. That at no time prior to or during the above events was
there probable cause to arrest the plaintiff, nor was it
reasonable for the defendants to believe that probable
cause existed.

27. That after two months of going to court, the criminal
charge against the plaintiff from the arrest of about
September 4, 2015, described above, was dismissed before
trial.

28. That in the course of the aforesaid arrest, plaintiff was
detained, manhandled, restrained and handcuffed by
defendant Maclennan and other police officers and
thereafter was transported in a police vehicle to the
offices of the 42nd precint of the NYPD, where he was
pedigreed, booked and further detained.

29. That while plaintiff was being detained, Detectives Terrell
and Maclennan completed arrest paperwork, in which they
swore in part, that the plaintiff had committed a crime and
or offense.

30. That the factual claims by Detectives Terrell and Maclennan
were materially false and the defendants knew it to be
materially false at the time they first made it, and every
time thereafter, when they repeated it.

31. That Detective Terrell and Maclennan forwarded these false
allegations to the Bronx County District Attorney (BCDA) in
order to justify the arrests and to persuade the BCDA to
commence the plaintiff's criminal prosecution.

32. That it was as a direct result of these false allegations
by the defendant police officers, that the plaintiff was
criminally arraigned and charged.

## AS A FIRST CAUSE OF ACTION FOR THE ARREST AGAINST DETECTIVE DAVID TERRELL AND DETECTIVE CORINNE MACLENNAN, FALSE ARREST/IMPRISONMENT: UNLAWFUL SEARCH AND SEIZURE: DEPRIVATION OF RIGHTS IN VIOLATION OF THE 4TH AND 14TH AMENDMENTS, BROUGHT PURSUANT TO 42 U.S.C § 1983

33. By this reference, plaintiff incorporates each and every preceding allegation and averment of this complaint as though fully set forth herein.

34. In the arrest, detention and imprisonment of plaintiff on or about September 4, 2014, defendants, acting under color of state law, deprived the plaintiff of his right to be free from unreasonable search and seizure and arrest without probable cause or reasonable suspicion as required by the Fourth and Fourteenth Amendments, therefore defendants are liable for violation of 42 U.S.C. Section 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

35. As a result of aforesaid violation, plaintiff has been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know him, was prevented from attending to his necessary affairs, and has been caused to incur legal expenses, and has been otherwise damaged in his character and reputation.

36. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

37. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

**AS A SECOND CAUSE OF ACTION AGAINST DETECTIVE DAVID TERREL AND
DETECTIVE CORINEE MACLENNAN: MALICIOUS PROSECUTION: DEPRIVATION
OF LIBERTY IN VIOLATION OF THE 4TH AND 14TH AMENDMENTS, BROUGHT
UNDER 42 U.S.C§ 1983**

38. By this reference, plaintiff incorporates each and every preceding allegation and averment of this complaint as though fully set forth herein.

39. That the defendant officers were directly involved in the initiation of criminal proceedings against the plaintiff.

40. That the defendant officers lacked probable cause to initiate criminal proceedings against the plaintiff.

41. That the defendant officers acted with malice in initiating criminal proceedings against the plaintiff.

42. That the defendant officers were directly involved in the continuation of criminal proceedings against the plaintiff.

43. That the defendant officers lacked probable cause in continuing criminal proceedings against the plaintiff.

44. That the defendant officers acted with malice in continuing criminal proceedings against the plaintiff.

45. That the defendant officers misrepresented and falsified evidence throughout all phases of the criminal proceeding.

46. That the defendant officers misrepresented and falsified evidence to the prosecutors in the Bronx County District Attorney's office.

47. That the defendant officers withheld exculpatory evidence from the prosecutors in the Bronx County District Attorney's office.

48. That the defendant officers did not make a complete statement of facts to the prosecutors in the Bronx County District Attorney's office.

49. The arrest, imprisonment and prosecution of the plaintiff

was malicious and unlawful, because plaintiff had committed no crime and there was no probable cause to believe that plaintiff had committed any crimes.

50.  The defendant officers actions were intentional, unwarranted and in violation of the law. The defendant officers had full knowledge that the charges made before the Court against the plaintiffs were false and untrue.

51.  By their conduct as described above, and acting under color of state law, defendants are liable to plaintiff under 42 U.S.C. § 1983 for the violation of his constitutional right to be free from malicious prosecution under the fourth and fourteenth amendments to the United States Constitution.

52.  As a consequence of the malicious prosecution by the defendant officers, plaintiff suffered a significant loss of liberty, humiliation, mental anguish, depression, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against defendant officers, individually and severally.

53.  In addition, the defendant officers conspired among themselves to deprive plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth and Fourteenth Amendments to United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

54.  The defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD Officers. Said acts by the Defendants Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to

deprive the Plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

55. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs sustained the damages herein before stated.

56. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

## AS A THIRD CAUSE OF ACTION AGAINST THE DEFENDANT CITY OF NEW YORK: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

57. By this reference, plaintiffs incorporates each and every allegation and averment set forth in all preceding paragraphs of this complaint as though fully set forth herein.

58. The defendant officers arrested and incarcerated the plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize the plaintiff's liberty, well-being, safety and constitutional rights.

59. The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

60. Prior to September 4, 2015, the City, through the NYPD, developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of the plaintiff, Shawn Nardoni's constitutional rights.

61. The City, through the NYPD, inadequately supervised and

disciplined its officers, including the individual defendants Terrell and Maclennan, and failed to discourage them from

a. Wrongfully arresting individuals on the pretext that they are engaged in illegal or criminal conduct;

b. manufacturing evidence against individuals allegedly involved in illegal or criminal conduct;

c. unlawfully searching detainees and/or their property in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband;

d. arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas); and

e. wrongfully and unreasonably brutalizing innocent members of the public by use of excessive force.

62. It was the un-official policy and/or custom of the City of New York, by the NYPD, to require police officers to obtain a certain number of arrests, and issue a certain number of criminal summons (arrest and summons quotas) every month, as a productivity goal as shown by the testimony in the case of Floyd v. The City of New York, (SDNY) which resulted in a ruling by Judge Scheindlin on August 12, 2013, that the City had violated the Fourth and Fourteenth Amendments by acting with "deliberate indifference" towards the NYPD's practice of stopping citizens and searching them without probable cause.

63. In support of plaintiff's allegation that police officers in the NYPD and specifically in the 42nd Precinct, are required by their supervisors to comply with an un-official quota system with respect to arrests and issuance of criminal summons, the case of Craig Matthews v. The City of New York, 13-cv-2915 (2d Cir. 2015). Matthews, a police officer assigned to the 42nd Precinct of the NYPD, brought

suit in 2013, alleging that his supervisors required him and other police officers to maintain a quota system mandating the number of arrests, summons and stops that police officers must conduct and that his supervisors further refined the un-official quota system by creating a point system that awarded points to police officers for issuing criminal summonses and pressured police officers to comply with the quota system. After introduction of affidavits and deposition testimony establishing the existence of the quota system in the 42nd Precinct, the City settled Matthew's case prior to trial.

64. It was the un-official policy and/or custom of the City of New York, by the NYPD, to inadequately supervise and discipline its police officers, including the Terrell and Maclennan, for arresting citizens without probable cause, unlawful searches and seizures and charging citizens with bogus crimes that could not be sustained in a court of law, thereby failing to adequately discourage further constitutional violations on the part of such officers. As a result, police officers believe that such misconduct on their part will not be punished but rather would be rewarded.

65. As a result of the above described policies and customs of the City of New York, Police Officers and Detectives such as Terrell and Maclennan, acted illegally with impunity, believing that their actions would not be properly monitored by Supervisory officers and even if their misdeeds are reported, they would not be punished or sanctioned for their misconduct.

66. The use of law employment quotas, the tacit encouragement of police officers to arrest citizens without probable cause in order to achieve the so called productivity goals

(arrest and summons quotas), and the failure to adequately supervise and discipline officers who have engaged in constitutional violations, all constitute wrongful policies, practices, customs and/or usages of the NYPD, and the City of New York, that demonstrate a deliberate indifference on the part of the policy makers of the City of New York to violations of the constitutional rights of persons within the City, and were the direct and proximate cause of the violations of Plaintiff's rights alleged herein.

67. The aforesaid event was not an isolated incident. The City and its police commissioner has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City and its police commissioner have allowed policies and practices that allow the aforementioned to persist.

68. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own

findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

69. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event, such as the matter at bar, that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which has been done on many occasions.

70. Further, the City and its police commissioner have no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected.

71. As direct proof of the NYPD's un-official policy of tacitly encouraging false arrests without any legal basis is the recent class action lawsuit of <u>Stinson vs. The City of New York</u>, 10-04228 (SDNY), wherein the City agreed to a settlement before trial in June 2017, of approximately $75,000,000. (Seventy Five Million Dollars) after it was established during discovery that between May 2007 and

December 2015, police officers issued 900,000 (nine hundred thousand) criminal summonses that were later dismissed because the officers lacked probable cause and thus were in violation of the Fourth Amendment.

72. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a deliberate indifference to the safety, well-being and constitutional rights of all defendants, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:

(a) The right of the plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

(b) The right of the plaintiff not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to him by the Fifth and Fourteenth Amendments to the Constitution of the United States.

(c) The right to be free from unreasonable detention and/or continued detention without probable cause in that the plaintiff was detained.

73. As a result of the actions of the defendants, the plaintiff was deprived of his rights, privileges, and immunities secured by the United States Constitution, in particular, the Fourth, Fifth, and Fourteenth Amendments, in contravention of 42 USC §1983 and the laws of New York State, and New York City without just or legal cause when

defendant City, by its employees and/or agents unlawfully arrested and imprisoned the plaintiff thereby depriving him of his liberty without due process of law.

74. The defendant officers were the actual agents of the defendant City of New York and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated the plaintiff's constitutional and civil rights, and the City of New York is therefore responsible for their acts, and liable to the plaintiff for the damages he suffered.

75. The actual principal/agent relationship between defendant City and the defendant officers was created by the fact they were employees of defendant City, and the City had the right to, and it did indeed regulate and control the activities and conduct of the defendant officers.

76. The defendant officers actions were vicious, wicked, cold-hearted, intentional, malicious, unwarranted and in violation of the law. The individual defendants had full knowledge that the charges made before the Court against the plaintiff were false and untrue.

## AS A FOURTH CAUSE OF ACTION AGAINST THE DEFENDANT CITY OF NEW YORK: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

77. By this reference, plaintiff incorporates each and every preceding allegation and averment of this complaint as though fully set forth herein.

78. The City of New York directly caused the constitutional violations suffered by the plaintiff as a result of the conduct of defendant David Terrell because the City of New York, knew, or should have known of defendant Terrell's propensity to engage in misconduct of the types alleged

herein including false arrest, use of physical threats and threat of improper criminal prosecution to suborn false testimony, and filing of false official statements.

79.   Prior to September 4, 2015, multiple complaints were made to the City of New York, charging Terrell with misconduct similar to those alleged here, thereby putting the City on notice with respect to Terrell's propensity to violate the constitutional rights of citizens, and Terrell was neither dismissed from the force nor punished in any proportionate manner but rather he was rewarded by being promoted from police officer to Detective.

80.   On February 9, 2005, Defendant Terrell, at the time, a police officer assigned to the 42nd Precinct of the NYPD, falsely arrested Peter Thomas. During the course of this arrest, Terrell handcuffed and beat Mr. Thomas causing injuries to his head, neck and back. Terrell and other police officers then attempted to physically coerce Mr. Thomas into signing a false confession. When he refused, Terrell beat him again and took him into custody. Terrell then charged and maliciously prosecuted Mr. Thomas with bogus crimes. After ten months of pre-trial detention, all the charges against Mr. Thomas were dismissed. Peter Thomas complained to the NYPD and the Civilian Complaints Control Board regarding Terrell's conduct and also sued Terrell and the City of New York for civil rights violations similar to the ones in this case.

81.   On June 13, 2006, defendant Terrell falsely arrested and physically brutalized Taisha Carter at a restaurant in Brooklyn. Ms. Carter was asked by police officers to produce her identification, as she attempted to comply, defendant Terrell suddenly grabbed her violently, handcuffed her and then falsely arrested her and charged

her with bogus crimes. She was then kept in custody for a day and taken to Central Booking. All criminal charges against Ms. Carter from this incident were later dismissed. Ms. Carter complained the NYPD and the CCRB about Terrell's conduct and also brought a lawsuit against Terrell and the City of New York alleging civil rights violations similar to the ones in this case.

82.   On February 3rd, 2009, defendant David Terrell, while acting as a police officer assigned to the 42nd Precinct of the NYPD, at the Bridges Juvenile Center, a Facility for juveniles in the custody of the New York City Department of Juvenile Justice, brutally assaulted SS, then a fifteen year old girl in the custody of the Department of Juvenile Justice. Terrell first knocked a plate of food out of the hands of the teenage girl, then in the presence of others, including other teenage girls in custody, Terrell punched SS multiple times in her face. The punches caused the juvenile's head to hit the bench where she was seated causing injuries to her face and head. As a result of this incident, a SS's guardian made a complaint to the NYPD and the CCRB about Terrell's conduct and also sued Terrell and the City of New York for civil rights violations.

83.   On March 15, 2011, defendant Terrell brutalized Charmaine Dixon and her infant son, then falsely arrested Ms. Dixon and charged her with bogus crimes. On that day, Charmaine Dixon was called to the 42nd Precinct because her infant son had been arrested at his school and taken to the 42nd Precinct. Accompanied by her infant daughter, Ms. Dixon went to the 42nd Precinct. As she was approaching the Precinct, Ms. Dixon heard her infant son yelling out in pain from within the "bullpen" of the precinct. Ms. Dixon peered through the window into the bullpen and saw several

police officers including Terrell, punching her son and using chemical agents against him while he was handcuffed. A horrified Ms. Dixon screamed then attempted to walk away from the precinct, at this point, five police officers all assigned to the 42nd Precinct of the NYPD, including Terrell, exited the precinct with the intent of preventing Ms. Dixon from reporting the brutality that she had just witnessed. As Ms. Dixon walked away, Terrell pursued and caught up with her. Without warning, he grabbed Ms. Dixon by her right arm, bear hugged her around the waist, picked her up in the air and slammed her down to the sidewalk. Defendant Terrell then handcuffed, falsely arrested and charged Ms. Dixon with bogus crimes of resisting arrest and obstructing governmental administration. The charges were dismissed two days later. Ms. Dixon complained to the NYPD and the CCRB regarding Terrell's conduct and sued the City of New York and David Terrell for civil rights violations similar to the ones in this case.

84.   On January 26, 2012, Defendant Terrell and other police officers were videotaped as they falsely arrested then brutalized Teenager Jateik Reed by beating him with batons, punching him, kicking him and spraying him with pepper spray although Mr. Reed had broken no laws and was not even resisting arrest. In the official reports of the incident, Terrell and other police officers involved all falsely stated that at the time of the arrest, Jateik Reid was found in possession of crack cocaine and marijuana. However, the video, which was filmed by a friend of Jateik Reid, proved that Reid had neither cocaine nor marijuana when he was arrested.  When Jateik Reid's mother, Schuan Reid, went to the 42nd Precinct to check on her Jateik Reid, accompanied by another infant son who was 16 years old at

the time, the police, including Terrell, arrested her, then arrested her 16 years old son and took custody of her four year old son as well. In the process of this arrest, Terrell punched the 16 years old son, and while he was on the ground, stepped on his head. This incident was witnessed by multiple bystanders. As a result of this incident, the Reids were all charged with bogus crimes which where then subsequently dismissed in court. Schuan Reid and her sons complained to the NYPD and the CCRB regarding the conduct of defendant Terrell and also turned over video evidence of the brutality and falsification of evidence on the part of Terrell to the NYPD and the CCRB. The Reids also brought a lawsuit for civil rights violations against the City of New York and David Terrell.

85. On June 9, 2015, a complaint was made to the CCRB, alleging that on May 29, 2015, defendant Terrell made a false official statement and abused process by failing to show a search warrant, while assigned to the 42nd Precinct of the NYPD. These complaints were substantiated by the CCRB and resulted in disciplinary charges against Terrell by the NYPD.

86. Upon information and belief, prior to September 4, 2015, the City of New York, was aware of numerous claims of constitutional violations involving David Terrell as documented by multiple CCRB complaints and federal civil right lawsuits filed against Terrell and the City of New York. Despite its knowledge of such claims and incidents of violation by Terrell, the City failed to take remedial action.

87. As a result of the City's inaction regarding Detective Terrell, Shawn Nardoni's rights were violated.

**WHEREFORE,** plaintiff respectfully requests judgment against the Defendants as follows:

1. For compensatory damages against all defendants in an amount to be proven at trial;
2. For exemplary and punitive damages against all defendants in an amount to be proven at trial;
3. For costs of suit herein, including plaintiff's reasonable attorney's fees; and;
4. For such other and further relief as the court deems proper.

Dated: February _9__, 2018,
       New York, New York

_____
Chukwuemeka Nwokoro, Esq.
Nwokoro & Scola, Esquires
Attorney for Plaintiff
44 Wall Street, Suite 1218
New York, New York 10005
Tel. (212) 785-1060