USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/07/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SHAWN NARDONI,

        Plaintiff,

  -v -

THE CITY OF NEW YORK and
DETECTIVE DAVID TERRELL.

        Defendants.

-----------------------------------------------------------------X

1:17-cv-2695-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

  Plaintiff Shawn Nardoni fell victim to gun violence as a young teenager. In September 2015, he was shot in the leg in his neighborhood in the Bronx, after which he was hospitalized for several days. Following his release from the hospital, Plaintiff was handcuffed and detained by officers of the New York City Police Department ("NYPD") and brought to a local police precinct. At the precinct, Plaintiff was interrogated by Defendant Detective David Terrell about the identity of Plaintiff's shooter. Plaintiff later sued Detective Terrell and the City of New York, bringing claims for false arrest and municipal liability under 42 U.S.C. § 1983 ("Section 1983"). Defendants now move for summary judgment. Because it is undisputed that Detective Terrell was not involved in Plaintiff's arrest, summary judgment is GRANTED as to Plaintiff's false arrest claim. And because Plaintiff points to no evidence in the record of a policy or custom by the City of New York to support his *Monell* claim, summary judgment is GRANTED on that claim as well.

I. **BACKGROUND**

   A. **Factual Background**[1]

On or about September 1, 2015, Plaintiff was shot in the leg. Pl.'s Rule 56.1 Counterstatement (ECF No. 90) ("Pl.'s 56.1") ¶ 1.[2] He was admitted to a hospital for treatment. *Id.*; Second Am. Compl. (ECF No. 54) ("SAC") ¶ 8. Plaintiff spent approximately three days in the hospital before being released. Declaration of Joseph Gutmann (ECF No. 86), Ex. B ("Pl.'s Dep.") at 64:17-23.[3] Shortly after being released from the hospital, on either September 4 or 5, 2015, Plaintiff was sitting outside of his apartment building in the Bronx with a friend when he was arrested by two or three members of the NYPD. Pl.'s Dep. at 66:13-15, 77:12-20; SAC ¶¶ 9-10. A "brown-skinned" female NYPD officer "grabbed [his] hands and put [him] in handcuffs" and then drove Plaintiff to the 42nd Precinct. Pl.'s Dep. at 77:9-11, 79:8-9, 82:23-83:9.

Once at the 42nd Precinct, Plaintiff was placed in a cell. Pl.'s Dep. at 83:10-11. At some point after that, Detective Terrell took Plaintiff from his cell to another room where Detective Terrell questioned Plaintiff. Pl.'s 56.1 ¶ 4; Pl.'s Dep. at 83:10-13, 84:8-16. According to Plaintiff's deposition testimony, Detective Terrell kept Plaintiff in this room for three or four hours and "badgered" Plaintiff in an attempt to solicit from him the name of the individual who shot him. Pl.'s 56.1 ¶ 5; Pl.'s Dep. at 85:1-8. Despite Plaintiff's response that he did not know his shooter's

---

[1] The following facts are drawn from the parties' Local Civil Rule 56.1 Statements and other submissions in connection with this motion and are undisputed or taken in the light most favorable to Plaintiff, unless otherwise noted.

[2] References to "Def.'s 56.1" and "Pl.'s 56.1" are to Defendant's Rule 56.1 statement and Plaintiff's Rule 56.1 counterstatement, respectively, submitted in connection with Defendant's motion for summary judgment. ECF No. 85; ECF No. 90. Plaintiff's Rule 56.1 counterstatement incorporates both the statement of facts from Defendant's Rule 56.1 statement and Plaintiff's responses. Defendant's Rule 56.1 statement cites primarily to the allegations made in the second amended complaint (ECF No. 54) and does not contest those allegations.

[3] The parties' 56.1 statements contain limited facts. The Court cites to additional facts in the record for purposes of providing a more fulsome background.

identity, Detective Terrell "tried to force [Plaintiff] to say it was some kid," Pl.'s Dep. at 84:20-21, and "kept on repeating the same stuff trying to force [Plaintiff] to say something that [Plaintiff] did not know," *id.* at 85:1-3. During the interrogation, Detective Terrell also threatened to kick Plaintiff's head through the wall and punch Plaintiff in the face. Pl.'s 56.1 ¶ 6; Pl.'s Dep. at 84:21-22.

Following the interrogation, Detective Terrell returned Plaintiff to his cell. Pl.'s 56.1 ¶ 7. Plaintiff was not taken to court or to central booking in connection with his arrest. Pl.'s Dep. at 101:15-18, 125:7-126:8.

On January 6, 2016, Plaintiff was interrogated by Detective Corinne MacLennan at the 42nd Precinct in another attempt to discover the name of the individual who shot him.[4] Pl.'s 56.1 ¶ 20; Declaration of Chukwuemeka Nwokoro (ECF No. 88) ("Nwokoro Decl."), Ex. A at 47. During that interrogation, Plaintiff stated that "he ha[d] no idea who shot him." Nwokoro Decl., Ex. A at 47.

It is undisputed that Detective Terrell did not arrest Plaintiff on either September 4 or 5, 2015. Pl.'s 56.1 ¶ 9. It is also undisputed that Detective Terrell did not order, instruct, plan, or facilitate an arrest of Plaintiff on either September 4 or 5, 2015. *Id.* ¶ 10.

### B. Procedural History

Plaintiff's mother, Patrice Nelson, initiated this action on Plaintiff's behalf on April 14, 2017. ECF No. 1. At the time of the filing of the initial complaint, Plaintiff was a minor. The complaint asserted false arrest and malicious prosecution claims under Section 1983 against Detective Terrell and the unidentified female officer who arrested Plaintiff. *Id.* The complaint also alleged that the City of New York bears responsibility for such violations under *Monell v. Department of Social Services*,

---

[4] The parties dispute the manner in which Plaintiff arrived at the 42nd Precinct for the January 6, 2016 interrogation. Plaintiff alleges that he was "brought to the 42nd Precinct," Pl. 56.1 at ¶ 20, whereas Defendants respond that it is not clear from the police report that Plaintiff was brought to the 42nd Precinct as opposed to having appeared there voluntarily, ECF No. 93 ¶ 20. This dispute is immaterial to Defendants' summary judgment motion.

3

436 U.S. 658 (1978). *Id.* In the original complaint, the female officer who arrested Plaintiff was not named because Plaintiff knew only that she was female and was an officer assigned to investigate Plaintiff's September 1, 2015 shooting. Pl.'s 56.1 ¶ 11.

On January 12, 2018, Plaintiff amended his complaint to name Detective MacLennan as the defendant previously identified as a Jane Doe officer. ECF No. 37. Detective MacLennan was added to the amended complaint based upon discovery identifying her as a female officer assigned to investigate Plaintiff's shooting. Pl.'s 56.1 ¶ 11.

Plaintiff amended the complaint once again on February 9, 2018, still asserting claims against Detective MacLennan, Detective Terrell, and the City of New York. ECF No. 54. In the second amended complaint, Plaintiff alleged that Detective MacLennan, acting in concert with Detective Terrell, improperly arrested and detained Plaintiff under false pretenses. SAC ¶ 22. Detective MacLennan is a Caucasian female. Def.'s 56.1 ¶ 12. When deposed on February 7, 2018, Plaintiff testified that the officer who arrested him was a "brown-skinned" female. *Id.* ¶ 11; Pl.'s Dep. at 77:9-11. In light of Plaintiff's deposition testimony, on May 31, 2018, Plaintiff agreed to the dismissal with prejudice of the false arrest claim against Detective MacLennan. ECF No. 83. Plaintiff also voluntarily dismissed his malicious prosecution claims. *Id.* On June 6, 2018, Defendants Detective Terrell and the City of New York moved for summary judgment on the remaining false arrest and municipal liability claims. ECF No. 84.

## II. STANDARD OF REVIEW

Defendants are entitled to summary judgement on a claim if they can "show[] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgement is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

4

moving party is entitled to a judgment as a matter of law." (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323-24). To defeat a motion for summary judgment, the non-movant—in this case, Plaintiff—"must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citations omitted). A plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). "Assessments of credibility and

5

choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (internal citation omitted). "[T]he judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 553 (quoting *Anderson*, 477 U.S. at 252); *see also Battino v. Cornelia Fifth Ave.*, LLC, 861 F. Supp. 2d 392, 400 (S.D.N.Y. 2012) ("To avoid summary judgment, all that is required of the non-moving party is a showing of sufficient evidence supporting the claimed factual dispute as to require a . . . jury's resolution of the parties' differing versions of the truth." (citing *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006))).

## III. DISCUSSION

To establish a claim under Section 1983, a plaintiff must show that there has been a denial of a right, privilege, or immunity secured by the Constitution or laws of the United States and that the deprivation of such right occurred under the color of state law. *See* 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). "Section 1983 does not in and of itself create substantive rights; rather, a plaintiff bringing a § 1983 claim must demonstrate a violation of an independent federal constitutional or statutory right." *Watts v. N.Y. City Police Dep't*, 100 F. Supp. 3d 314, 322 (S.D.N.Y. 2015) (citing *Chapman v. Hous. Welfare Rights Org.*, 441 U.S. 600, 617-18 (1979)).

### A. False Arrest Claim Against Detective Terrell

A false arrest claim under Section 1983, premised on an individual's right under the Fourth Amendment to be free from unreasonable seizures, "is substantially the same as a claim for false arrest under New York law." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Under New York law, a plaintiff seeking to establish a cause of action for false arrest must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the

6

confinement; and (4) the confinement was not otherwise privileged, such as by probable cause or a warrant. *Willey v. Kirkpatrick*, 801 F.3d 51, 70-71 (2d Cir. 2015) (citing *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)).

To survive summary judgment on this claim, Plaintiff must come forward with evidence that, among other things, shows a genuine dispute regarding Detective Terrell's personal involvement in Plaintiff's arrest. The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001). "With respect to a claim for false arrest, this means that each individual must have been personally involved in the arrest in order to be held liable." *Garnett v. City of New York*, No. 13-cv-7083 (GHW), 2014 WL 3950904, at *7 (S.D.N.Y. Aug. 13, 2014) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)); *see also id.* (granting summary judgment in favor of an undercover agent on grounds that the agent was not personally involved in the plaintiff's arrest when the agent had no interaction with the plaintiff during the narcotics transaction that led to the arrest, did not transmit any information about plaintiff to arresting officers, and "was not involved in apprehending or arresting" the plaintiff); *see also Pittman v. City of New York*, No. 14-cv-4140 (ARR) (RLM), 2014 WL 7399308, at *6 (E.D.N.Y. Dec. 30, 2014) (granting defendants' motion to dismiss plaintiff's false arrest claims against the non-arresting NYPD officer defendants because "[n]one of [those] defendants physically participated in plaintiffs' detention"); *Travis v. Vill. of Dobbs Ferry*, 355 F. Supp. 2d 740, 752-53 (S.D.N.Y. 2005) (granting summary judgment in favor of officers who were merely present at scene of arrest and therefore not "personally involved").

In addition, a plaintiff does not have a claim for false arrest under Section 1983 if, at the time of his arrest, he was already in custody. *See, e.g.*, *Walker v. Sankhi*, No. 10-cv-6669 (AKH), 2011 WL 13176089, at *2 (S.D.N.Y. June 27, 2011) (holding that because plaintiff was already in custody at the time of his alleged false arrest, his false arrest claim could not succeed), *aff'd*, 494 F. App'x 140 (2d Cir. 2012); *Goncalves v. Reynolds*, 198 F. Supp. 2d 278, 283 (W.D.N.Y. 2001) ("Since plaintiff would have been in custody anyway, he cannot state a claim for false arrest.").

Here, Plaintiff points to no evidence of Detective Terrell's personal involvement in his arrest. Accordingly, Defendants are entitled to summary judgment on Plaintiff's false arrest claim. No dispute exists as to whether Detective Terrell was involved with Plaintiff's initial seizure and transportation to the precinct: both parties agree that he was not involved. It is also undisputed that Detective Terrell did not order, instruct, plan, or facilitate an arrest of Plaintiff on either September 4 or 5, 2015. While Detective Terrell interacted with Plaintiff at the precinct, that interaction took place after Plaintiff's arrest. Because Plaintiff was already in custody at the time of his interaction with Detective Terrell, Plaintiff cannot establish a claim for false arrest based on Detective Terrell's actions. *See Garnett*, 2014 WL 3950904, at *7; *Walker*, 2011 WL 13176089, at *2.

In opposing summary judgment, Plaintiff argues that Detective Terrell's interrogation—which lasted over three hours and during which Detective Terrell "attempted to coerce [Plaintiff] into giving false testimony"—leads to a reasonable inference that Detective Terrell "arranged the false arrest." Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. (ECF No. 89) ("Pl.'s Opp'n") at 6. First, this argument is contrary to the undisputed facts asserted in the 56.1 statements, that Detective Terrell did not "order, instruct, plan or facilitate" Plaintiff's arrest. Pl.'s 56.1 ¶ 10. More fundamentally, though, an interrogation subsequent to an arrest is itself not an arrest. "A lengthy interview . . ., without more, does not support a claim for false imprisonment."[5] *Lee v. Bankers Tr.*

---

[5] "False arrest and false imprisonment are synonymous causes of action because the elements of false arrest

8

*Co.*, 96-cv-8153 (DAB), 1998 WL 107119, at *4 (S.D.N.Y. Mar. 6, 1998); *see also Niemann v. Whalen*, 911 F. Supp. 656, 666-67 (S.D.N.Y. 1996). *Niemann* is on point. The New York State Police investigator defendant in *Niemann* interacted with the plaintiff only after the plaintiff arrived at the precinct. *Niemann*, 911 F. Supp. at 661-62. The extent of the defendant's interaction with the plaintiff was his interrogation of the plaintiff regarding the theft of money from the bank where the plaintiff worked. *Id.* at 661-62. The plaintiff subsequently filed a Section 1983 action against the defendant, alleging that the defendant conspired to falsely arrest and falsely imprison the plaintiff. *Id.* at 663. The false imprisonment and false arrest claims premised on "the fact that [the plaintiff] was interviewed" were dismissed on summary judgment. *Id.* at 666-67.

Here, it is undisputed that Detective Terrell interviewed Plaintiff. However, like the investigator in *Niemann*, Detective Terrell was not involved in seizing Plaintiff, in bringing him to the precinct, or in confining him.[6] Detective Terrell merely interrogated Plaintiff *after* his arrest. Plaintiff has conceded in his response to Defendants' 56.1 statement that Detective Terrell did not "order, instruct, plan or facilitate" Plaintiff's arrest. Pl.'s 56.1 ¶ 10. Nor has Plaintiff presented any evidence to support his argument that Detective Terrell "arranged" the arrest. "In the fact finding process a trier is authorized to draw reasonable inferences from known or proven facts. But the inference, to qualify as a fact found, must be reasonable, and, in the context of the known facts, be one that springs readily and logically to mind and is not one of two or more inferences, both or all

---

and false imprisonment claims are identical under New York law." *Murray v. Williams*, No. 05-cv-9438 (NRB), 2007 WL 430419, at *5 (S.D.N.Y. Feb. 8, 2007) (citing *Covington v. City of New York*, 171 F.3d 117, 125 (2d Cir. 1999)).

[6] Plaintiff's opposition, for the first time in this litigation, asserts that his false arrest claim is not based on a formal arrest, but instead on Plaintiff's unlawful detention. Pl.'s Opp. at 5. Yet, Plaintiff has provided no evidence that Detective Terrell was personally involved in Plaintiff's detention, formal or otherwise. It is undisputed that, following the interrogation, Plaintiff was returned to his cell by Detective Terrell. Pl.'s 56.1 ¶ 7. Plaintiff does not argue, however, that merely returning Plaintiff to his cell constituted false arrest. For the reasons noted above, such an argument would be unavailing.

of which are about equally probable." *Frankel v. Slotkin*, 984 F.2d 1328, 1335 (2d Cir. 1993) (quoting *NLRB v. Martin A. Gleason, Inc.*, 534 F.2d 466, 474 (2d Cir. 1976)). "Permissible inferences must still be within the range of reasonable probability . . . and it is the duty of the court to withdraw the case . . . when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Id.* (citing *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 887 (2d Cir. 1972)). Further, "an inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact [that is known to exist]." *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999)). The inference that Plaintiff asks this Court to make does not "spring[ ] readily and logically to mind." *Frankel*, 984 F.2d at 1335 (internal citation omitted). Instead, it is merely one of multiple inferences that may be drawn. Another equally, if not more, probable inference is that Detective Terrell, because of his position as a detective, routinely questioned arrestees, while Plaintiff's arresting officer did not. *See, e.g.*, *United States v. Tirado*, No. 17-cr-668 (GHW), 2018 WL 3432040, at *6 (S.D.N.Y. July 16, 2018) (criminal defendant arrested by officers then taken to another precinct to be interviewed by detectives). Plaintiff has developed no further facts, other than the fact of Detective Terrell's interrogation, to suggest that the detective was the driving force behind Plaintiff's arrest. And he has expressly conceded that Detective Terrell did not "order, instruct, plan or facilitate" Plaintiff's arrest.

Furthermore, to hold Detective Terrell liable for false arrest on this record would open up the door for false arrest claims by arrestees against any person with whom the arrestee has contact while incarcerated. If a non-arresting officer were to remove an arrestee from his cell to have him fingerprinted, for example, that officer might then be liable for false arrest. Or if an officer merely transports an arrestee from a precinct to central booking, that officer might be liable for false arrest. Plaintiff points to no legal authority that supports such a rule. Absent supporting authority, the

10

Court will not hold that an arrestee may sustain a false arrest claim in these circumstances.

   B.  **Municipal Liability**

Defendant's motion for summary judgment on Plaintiff's claim against the City of New York is also granted. "To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal citation omitted); *see Monell*, 436 U.S. at 690-91. Accordingly, "a municipality cannot be made liable [under § 1983] by application of the doctrine of *respondeat superior*," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986), but rather the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury," *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (internal quotation marks omitted).

An underlying constitutional violation is a required predicate for municipal liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). "It does not follow, however, that the plaintiff must obtain a *judgment* against the individual tortfeasors in order to establish the liability of the municipality. It suffices to plead and prove against the municipality that municipal actors committed the tort against the plaintiff and that the tort resulted from a policy or custom of the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). "In fact, the plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality." *Id.* (internal citations omitted).

The evidence before the Court might support a claim that the officer who arrested Plaintiff—although not named as a defendant here—did so without probable cause. Even if Plaintiff had shown a dispute of fact with respect to the underlying constitutional violation, however, he has not pointed to evidence of a policy or custom sufficient to withstand summary

11

judgment.  A plaintiff may satisfy the "policy or custom" prong in one of four ways:  by proving the existence of (1) a formal policy, *see Monell*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur*, 475 U.S. at 483-84; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact," *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996).  In addition, a plaintiff must show that there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *City of Canton*, 489 U.S. at 385); *see Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016) ("A plaintiff must also demonstrate a sufficient causal relationship between the violation and the municipal policy or practice." (citing *Monell*, 436 U.S. at 694-95)).

Plaintiff asserts that the City is liable because  (1) the City failed to adequately supervise or discipline its officers when they made arrests without probable cause in order to satisfy unofficial arrest quotas, SAC ¶ 63-64; Pl.'s Opp'n at 8; and (2) the City knew, or should have known, of Detective Terrell's "propensity to engage in misconduct of the types alleged herein including false arrest, use of physical threats and threat of improper criminal prosecution to suborn false testimony, and filing of false official statements."  SAC ¶ 78; Pl.'s Opp'n at 8-9.  The Court addresses each argument in turn.

### 1. Deliberate Indifference

To succeed on a theory of liability based on either the City's failure to supervise or failure to discipline, a plaintiff must make three showings to establish the requisite "deliberate indifference":

> First, to reach the jury, the plaintiff must offer evidence from which a reasonable jury could conclude that a policy-maker knows to a moral

> certainty that her employees will confront a given situation. Next, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Green v. City of N.Y.*, 465 F.3d 65, 80-81 (2d Cir. 2006) (citing *Walker v. City of N.Y.*, 974 F.2d 293, 297-98 (2d Cir. 1992) (internal quotation marks omitted)). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks and citation omitted). A plaintiff must demonstrate that the City had notice—be it "actual or constructive"—that such inadequacy or failure to supervise was causing civil rights violations. *Id.* "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62. The Second Circuit has recognized that the "stringent causation and culpability requirements" applicable to a claim premised on a city's failure to train its employees "have been applied to a broad range of supervisory liability claims," including claims based on a failure to discipline. *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir. 2004)).

As a threshold matter, Plaintiff fails to point to any evidence that the City of New York had notice—either actual or constructive—of any deficiencies in its supervision and discipline of its officers prior to Plaintiff's arrest in September 2015.[7] Therefore, Plaintiff's claim that the City was deliberately indifferent to constitutional violations that resulted from the City's failure to supervise

---

[7] As discussed above, Plaintiff cites to the class action settlement in *Stinson* as evidence supporting his *Monell* claim. To the extent that Plaintiff relies on the Stinson settlement as evidence that the City was on notice of the practice of issuing unfounded summonses to fill quotas, that reliance is misplaced. The *Stinson* settlement was not approved until June 2017. *See* 256 F. Supp. 3d 283 (filed June 12, 2017). Plaintiff's alleged false arrest occurred in September 2015—almost two years prior to the settlement.

13

or discipline police officers fails. *See Connick*, 563 U.S. at 61.

Plaintiff cites to a class action settlement against the City of New York, *Stinson v. City of New York*, 256 F. Supp. 3d 283 (S.D.N.Y. 2017), "as direct proof of NYPD's . . . tacitly encouraging false arrests." SAC ¶ 71; *see* Pl.'s Opp'n at 8. Therefore, it appears that, in addition to his deliberate indifference theory, Plaintiff relies on a widespread practice theory of liability. *See Monell*, 436 U.S. at 690-91. To establish the existence of a widespread custom of constitutional violations, Plaintiff cites to *Stinson* and two other cases brought against the City. *See* SAC ¶¶ 62-63. None of those cases, either individually or considered together, sufficiently shows a persistent and widespread practice.

In *Stinson*, the court approved a settlement of $75 million in favor of a class of plaintiffs who brought false arrest claims after they were served with criminal summonses that were later dismissed for lack of probable cause. *Stinson*, 256 F. Supp. 3d at 287, 297. A review of the *Stinson* settlement reveals that "the parties have reached a settlement agreement . . . without admitting any fault or liability." *See* ECF No. 319-1 at 3, No. 10-cv-4228 (RWS).[8] Similarly, the parties in *Matthews v. City of New York*, another case cited by Plaintiff, reached a settlement prior to trial. *See* ECF No. 67, No. 12-cv-1354 (PAE) ("*Matthews* Settlement"); *see also* SAC ¶ 63.[9] That settlement agreement specifically provides that "[n]othing contained herein shall be deemed to be an admission by any of the

---

[8] While Plaintiff only cites to the settlement in *Stinson*, the Court notes that Plaintiff failed to attach the actual settlement itself to the documents submitted to the Court. Further, the Court conducted additional research on the settlement and found that neither the settlement—which references earlier proceedings in the case— nor the earlier case proceedings contains reference to any substantiated claims against the NYPD through the Civilian Complaint Review Board ("CCRB") that would have effectively put the City of New York on notice regarding any potential constitutional violations on behalf of the NYPD. Although Plaintiff does not cite to any other earlier proceedings except the June 7, 2017 settlement, such earlier proceedings themselves and complaints associated therewith do not constitute the requisite "actual or constructive notice" necessary to establish the deliberate indifference for a *Monell* claim. *See Harrison v. City of New York*, No. 15-cv-4141 (RWS), 2017 U.S. Dist. LEXIS 152166, at *19 (S.D.N.Y. Sept. 18, 2017) (granting the motion to dismiss on deliberate indifference claims, denying the plaintiff's argument that lawsuits, notices of claims and complaints constituted notice of insufficient training and supervision).

[9] Plaintiff cites to the Second Circuit's review of an order granting summary judgment in *Matthews*. *See* SAC ¶ 63. The Second Circuit vacated summary judgment and remanded the case to the district court. *See generally* 779 F.3d 167 (2d Cir. 2015). After remand, the parties settled. *See* ECF No. 67, No. 12-cv-1354 (PAE).

defendants that they have in any manner or way violated plaintiff's rights, or the rights of any other person or entity, as defined in the constitutions, statutes, ordinances, rules or regulations of the United States, the State of New York, or the City of New York . . . ." *Matthews* Settlement ¶ 4. Because neither of these cases resulted in an admission or finding of liability, those cases do nothing to prove that the alleged constitutional violations were in fact committed. Therefore, these cases are insufficient to establish Plaintiff's *Monell* claim. *See Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22-23 (2d Cir. 2012) (summary order) ("[Plaintiff's] citation to various lawsuits involving inmate claims for the excessive use of force is not probative of the existence of an underlying policy that could be relevant here."); *Walker v. City of New York*, 12-cv-5902 (PAC), 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014) ("A lawyer's citations to actions she has brought and subsequently settled without adjudication or admission of liability is clearly an insufficient basis for a *Monell* claim." (citing *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 409 (E.D.N.Y. 2011))); *Jones v. City of New York*, No. 12-cv-3658, 2013 WL 6047567, at *13 (E.D.N.Y. Nov. 14, 2013) ("[T]he existence of other lawsuits against the City alleging similar violations of constitutional rights also does not establish a policy or custom as necessary under *Monell*.").

Finally, Plaintiff cites to *Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013), as evidence of the NYPD's alleged policy or practice of performing baseless arrests and issuing unfounded criminal summonses in order to meet monthly quotas. *See* SAC ¶ 62. In *Floyd*, the court evaluated evidence of unconstitutional stops and frisks that occurred between January 2004 and June 2012. 959 F. Supp. 2d. at 555. The court held that the City of New York was liable for violating the Fourth and Fourteenth Amendment rights of plaintiffs—blacks and Hispanics who were stopped by police—because the City was deliberately indifferent to the police department's "unconstitutional stops, frisks, and searches" which were based on racial profiling. *Id.* at 658-59. The court also found sufficient evidence of a widespread practice of those unconstitutional stops and frisks. Id. at

15

659-60. While the findings of that court may be evidence of a pattern of unconstitutional stops and frisks, Plaintiff has pointed to no evidence showing any connection between that practice and a widespread practice of unconstitutional arrests. Even if the practice of the unlawful stops were applicable here, *Floyd* only assessed the practice as it existed between 2004 and 2012. Plaintiff has produced no evidence that such a practice was still in place in September 2015 when he was arrested. *See Rodriguez v. County of Westchester*, No. 15-cv-9626 (PAE), 2017 WL 118027, at *7 (S.D.N.Y. Jan. 11, 2017) (dismissing *Monell* claim where evidence relied upon to prove widespread practice "was too remote in time because the report was written more than six years before the events in question occurred"); *Melvin v. County of Westchester*, No. 14-cv-2995 (KMK), 2016 WL 1254394, at *15 (S.D.N.Y. Mar. 29, 2016) ("Allegations that a defendant acted pursuant to a policy or custom[,] without any facts suggesting the policy's existence, are plainly insufficient." (alteration in original) (citation omitted)). Accordingly, Plaintiff has failed to show that a genuine issue of fact exists with respect to, a "direct causal link," *City of Canton*, 489 U.S. at 385, between the unlawful stop-and-frisk practice and his arrest over three years later. His *Monell* claim based on a persistent and widespread practice is, therefore, dismissed. *See Mitchell*, 841 F.3d at 80 ("A plaintiff must also demonstrate a sufficient causal relationship between the violation and the municipal policy or practice." (citing *Monell*, 436 U.S. at 694-95)).

### 2. Detective Terrell's History of Misconduct

Plaintiff also relies on Detective Terrell's alleged history of misconduct as evidence of a pattern or practice. SAC ¶¶ 77-87; Pl.'s Opp'n at 8-10. Specifically, Plaintiff describes a February 9, 2005 incident in which Detective Terrell falsely arrested Peter Thomas and used excessive force against him, SAC ¶ 80; a June 2006 incident in which Detective Terrell "falsely arrested and physically brutalized Taisha Carter," *id.* ¶ 81; a February 2009 incident in which Detective Terrell "brutally assaulted" a fifteen-year-old girl, *id.* ¶ 82; a March 2011 incident in which Detective Terrell

16

"brutalized Charmaine Dixon and her infant son, then falsely arrested Ms. Dixon and charged her with bogus crimes," *id.* ¶ 83; a January 2012 incident in which Detective Terrell and other officers falsely arrested and "brutalized" a teenager, *id.* ¶ 84; and a June 2015 incident in which Detective Terrell "made a false official statement and abused process by failing to show a search warrant," *id.* ¶ 85. The false arrest allegations are stated in conclusory fashion, and the only evidence outside of the pleadings that Plaintiff cites to is a short excerpt of Detective Terrell's deposition testimony. In that testimony, Detective Terrell describes a 2009 incident in which he hit a fifteen-year-old girl twice and received no disciplinary action as a result. Nwokoro Decl., Ex. B at 62:3-63:22. No lawsuits, complaints, or claims resulted from that incident. *Id.* at 62:16-63:3. This evidence is insufficient to support a claim that the City is liable for Plaintiff's false arrest here. *See Jones v. Town of E. Haven*, 691 F.3d 72, 85 (2d Cir. 2012) (holding that three incidents "fell far short of showing a policy, custom, or usage of officers"); *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (holding that four constitutional violations "falls far short of establishing a practice that is 'so persistent or widespread' as to justify the imposition of municipal liability"); *White v. City of New York*, 206 F. Supp. 3d 920, 938 (S.D.N.Y. 2016) (holding six incidents over five years insufficient to plausibly allege the existence of a municipal policy); *see also Tieman v. City of Newburgh*, No. 13-cv-4178 (KMK), 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) ("[T]he fact that there were allegations of thirteen instances of excessive force during arrests over four years (none of which involved findings or admissions of culpability) during which hundreds, if not thousands, of arrests were made does not plausibly demonstrate that the use of excessive force during arrest was so frequent and pervasive as to constitute a custom").

Even if these incidents were sufficient to establish a widespread pattern of misconduct by Detective Terrell, Plaintiff shows no causal link between that pattern and his arrest. As the Court has explained, Detective Terrell did not participate in Plaintiff's arrest, and the only constitutional

violation for which Plaintiff has filed this suit is false arrest. And there is no evidence in this record to even hint that whatever past misconduct Detective Terrell is guilty of was the cause of Plaintiff's alleged false arrest in September 2015. *See Triano*, 895 F. Supp. 2d at 531. Summary judgment is accordingly granted on Plaintiff's municipal liability claim.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED in its entirety.

The Clerk of Court is directed to terminate all pending motions, to enter judgment in favor of Defendants, and to close this case.

SO ORDERED.

Dated: August 7, 2018
New York, New York

GREGORY H. WOODS
United States District Judge